TEZ Law Firm, A Professional Corporation
JJ ZHANG, ESQ. (SBN 326666)
Email: jj@tezlawfirm.com
4141 S Nogales Street C102
West Covina, CA 91792
Telephone No.: (626) 678-8677
Facsimile No.: (909) 598-1788
Attorney for Petitioner-Plaintiff
WEIWEI ZOU (A# 236-979-251)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| WEIWEI ZOU,<br>Petitioner-Plaintiff,<br>vs.<br><br>**MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security, in his official capacity;<br><br>**DAVID J. VENTURELLA,** Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement, in his official capacity;<br><br>**ERNESTO SANTACRUZ,** Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement, in his official capacity;<br><br>**OFFICER IN CHARGE,** Adelanto ICE Processing Center, in his/her official capacity;<br><br>**TODD BLANCHE,** Attorney General of the United States, in his official capacity,<br><br>Respondents-Defendants. | Case No.: ______________________<br><br>PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226; 5 U.S.C. § 706; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Petitioner Detained At:<br>Adelanto ICE Processing Center<br>10400 Rancho Road, Adelanto, CA 92301<br>(San Bernardino County)<br><br>A# 236-979-251 |

## I. INTRODUCTION

1. Petitioner Weiwei Zou is a Chinese national who entered the United States on a B-2 visitor visa after inspection and admission by U.S. Customs and Border Protection at New York on February 4, 2026. Before her authorized stay expired, she filed Form I-589 on August 1, 2026, seeking asylum, withholding of removal, and Convention Against Torture protection based on alleged persecution by Chinese police for practicing Christianity in an unregistered house church. USCIS scheduled biometrics for August 26, 2026 and an asylum interview for August 27, 2026.

2. Petitioner did exactly what USCIS's notices instructed her to do. She appeared on time at the USCIS Application Support Center in El Monte, California for biometrics. While she was checking in, ICE officers arrested her and took her into custody. Her resulting detention prevented her from attending the asylum interview scheduled for the next morning. Thus, government custody was not a voluntary failure to appear that prevented Petitioner from completing the scheduled affirmative-asylum process.

3. Petitioner has no criminal history. She was inspected and admitted on a B-2 visa and therefore is not an “applicant for admission” within the meaning of 8 U.S.C. §§ 1101(a)(13)(A) and 1225(b), even though her period of authorized stay expired on August 3, 2026. She has a fixed address and complied with USCIS's biometrics instructions. Since her arrest on August 26, 2026, Petitioner has been held at the Adelanto ICE Processing Center. Respondents have served her with a Notice to Appear, but that is the only document Respondents have served on Petitioner; she has not been served with an initial custody determination on Form I-286 or any other custody document, and has not had a bond redetermination hearing before an immigration judge.

4. Petitioner's detention pending removal proceedings is governed by 8 U.S.C. § 1226(a), not § 1225(b) or § 1226(c). Section 1226(a) permits release on bond or conditional parole. The implementing regulations contemplate an initial DHS custody determination and permit a detainee to request redetermination before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), (g), 1003.19. Although § 236.1(g) states that an immigration official may issue Form I-286, Petitioner alleges more than the absence of a particular form: Respondents have disclosed no operative custody determination or custody basis and have not afforded meaningful access to the regulatory redetermination process. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), concerns applicants for admission detained under § 1225(b)(2)(A) and does not govern a person who was inspected and admitted.

5. The primary relief Petitioner seeks is immediate release under reasonable conditions. Respondents used a mandatory USCIS compliance appointment as the occasion to arrest a person who appeared exactly as directed, had no criminal history, maintained a fixed residence, and had timely invoked the affirmative-

asylum process before her authorized stay expired. They then continued her confinement without disclosing any individualized custody rationale or providing a meaningful opportunity to contest it. Release from unlawful physical custody is the traditional function of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973). In the alternative, Petitioner requests prompt disclosure of the custody basis and immediate access to immigration-judge redetermination under 8 C.F.R. § 1003.19. Petitioner also challenges any custody determination that exists as arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A). Petitioner also seeks a declaration that her custody is governed by § 1226(a), not § 1225(b).

## II. JURISDICTION

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241(c)(3), which authorizes habeas relief for a person held in custody in violation of the Constitution or laws or treaties of the United States, and under 28 U.S.C. § 1331. Federal courts retain habeas jurisdiction over a constitutional challenge to immigration detention. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Boumediene v. Bush*, 553 U.S. 723, 745 (2008).

7. Petitioner challenges the legal basis and process for her present physical detention, not the merits of a removal charge or a request that this Court select a discretionary bond amount. Section 1226(e) does not foreclose review of constitutional claims or questions of law concerning the governing detention framework. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018); *Martinez v. Clark*, 124 F.4th 775, 779–85 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Section 1331 also supplies jurisdiction over the alternative APA claim under 5 U.S.C. §§ 704 and 706.

## III. VENUE AND CUSTODY

8. This Court has jurisdiction over Petitioner's immediate custodian because Petitioner is physically confined at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, within this District. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004) (habeas petition must be filed in the district of confinement, against the immediate custodian).

9. Venue is proper in the Eastern Division of the Central District of California under 28 U.S.C. § 1391(e) and this Court's own division-assignment rules for cases arising from custody at Adelanto. Venue and custodial jurisdiction are separate inquiries; Petitioner cites § 1391(e) for venue only, and *Rumsfeld v. Padilla* and 28 U.S.C. § 2241(a) for jurisdiction over the immediate custodian.

## IV. REQUIREMENTS OF 28 U.S.C. §§ 2241 AND 2243

10. Section 2243 directs a court receiving a habeas application to act on it forthwith and sets the time for a return. 28 U.S.C. § 2243. The Court should therefore require a prompt return identifying the legal and factual basis for Petitioner's present custody.

## V. PARTIES

11. Petitioner Weiwei Zou (A# 236-979-251) is a native and citizen of the People's Republic of China, born September 20, 1994 in Zhengzhou, Henan Province. She was lawfully admitted to the United States on a B-2 visitor visa on February 4, 2026, and has resided at 3721 Dubonnet Avenue, Rosemead, California since that date. She is currently detained at the Adelanto ICE Processing Center in Adelanto, California.

12. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity. He is responsible for the administration and enforcement of the immigration laws, including the detention of noncitizens such as Petitioner.

13. Respondent David J. Venturella is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

14. Respondent Ernesto Santacruz is the Los Angeles Field Office Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. He has direct supervisory authority over the ICE officers who arrested Petitioner on August 26, 2026 at the USCIS El Monte Application Support Center and who continue to hold her in custody.

15. Respondent Officer in Charge of the Adelanto ICE Processing Center is Petitioner's immediate custodian and is sued in his/her official capacity. Petitioner's counsel will confirm and, if necessary, substitute the specific named custodian promptly.

16. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity.

## VI. LEGAL FRAMEWORK

*A. Petitioner Was Lawfully Admitted and Is Detained Under 8 U.S.C. § 1226(a), Not § 1225(b); Matter of Yajure Hurtado Does Not Apply to Her.*

17. Section 1225(b) governs applicants for admission. Under 8 U.S.C. § 1101(a)(13)(A), admission means the lawful entry of a noncitizen after inspection and authorization by an immigration officer. Petitioner alleges that CBP inspected and admitted her on February 4, 2026. Expiration of her authorized stay may render her removable under 8 U.S.C. § 1227(a)(1)(B), but it does not undo the historical fact of

admission or transform her into an applicant for admission under § 1225(b). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), therefore does not control her custody classification.

18. Section 1226(a) authorizes arrest and detention pending a decision whether a noncitizen is to be removed and permits release on bond or conditional parole. Petitioner alleges no conviction, terrorism-related ground, or other basis for mandatory detention under § 1226(c). On the facts presently known, § 1226(a) supplies the governing detention authority. This tracks the line the Ninth Circuit recently confirmed governs which detention regime applies: a noncitizen apprehended in the interior of the United States, rather than at the border or a port of entry, is subject to § 1226, not the mandatory-detention regime of § 1225(b)(2)(A), which the government reserves for applicants for admission. *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 9–10, 14–19 (9th Cir. July 30, 2026).

19. The regulations contemplate an initial DHS custody determination and authorize a detainee, before a final removal order, to request amelioration of custody conditions from an immigration judge. 8 C.F.R. §§ 236.1(d)(1), (g), 1003.19. At a § 1226(a) bond redetermination, Petitioner may present the factors identified in *Matter of Guerra*, including a fixed address, family and community ties, employment history, appearance history, criminal record, immigration history, and manner of entry. 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner alleges that Respondents have not disclosed an operative custody determination or custody basis and have not given her meaningful access to an immigration-judge redetermination.

*B. Due Process Requires Notice and Meaningful Access to the Available Custody-Review Process.*

20. The Fifth Amendment protects every person within the United States from deprivation of liberty without due process, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner's detention began only days before this filing, so she does not contend that its duration alone is already unconstitutionally prolonged, and she does not rest on the mere existence of discretionary detention authority as adequate process in itself. Her claim is that Respondents used her compliance with a mandatory USCIS appointment as the occasion for arrest and have since continued her confinement without disclosing an individualized custody rationale or affording a meaningful opportunity to contest it. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

21. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–23 (9th Cir. 2022), holds that due process did not require a second § 1226(a) hearing with the burden shifted to the government on the facts there. This Petition therefore does not claim an automatic entitlement, after four days of custody, to a government-burden clear-and-convincing-evidence hearing. It seeks enforcement of the initial custody and redetermination framework in 8 C.F.R. §§ 236.1 and 1003.19, and habeas relief if Respondents cannot establish lawful custody or continue to deny meaningful access to that framework.

22. The private interest at stake is physical liberty and it is fundamental, and the public interest points the same direction. *Mathews v. Eldridge*, 424 U.S. at 335. The government's ability to secure voluntary compliance with USCIS and immigration-court process depends on people being able to rely on the government's own notices without fear that compliance itself will become the occasion for an unexplained arrest. Due process for this purpose does not depend on immigration status: it protects every person within the United States, including a noncitizen without lawful status. *Plyler v. Doe*, 457 U.S. 202, 214 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."). Nor does it diminish for a person facing even the most serious charge. Petitioner who has committed no crime and did nothing but comply with the government's own instructions is entitled to no less.

*C. The Circumstances of Arrest Confirm Petitioner's Compliance and Low Flight Risk.*

23. USCIS regulations require an asylum applicant to appear for biometrics and an interview and address the consequences of a failure to appear. 8 C.F.R. §§ 208.9, 208.10. Section 208.10 expressly excuses a failure caused by exceptional circumstances. Petitioner appeared for biometrics as instructed, and ICE custody prevented attendance at the interview scheduled for the next morning. These circumstances establish that the missed interview was not voluntary and are also relevant to flight risk, compliance, and the equities of release.

24. Petitioner's pending asylum application did not itself extend her B-2 status or eliminate removability after her I-94 expired. Petitioner therefore does not allege that the mere filing of Form I-589 made her arrest categorically unauthorized. She alleges instead that her voluntary appearance at a government appointment, fixed residence, absence of criminal history, and prompt filing before expiration of her authorized stay strongly rebut any suggestion that detention is needed to secure her appearance.

25. Petitioner has not been provided the arrest warrant, if any, the Form I-286 custody notice, or an individualized explanation of why detention rather than release conditions are necessary. Those records are within Respondents' control and should be produced with the return. If Respondents contend the arrest was warrantless under 8 U.S.C. § 1357(a)(2), they should identify the facts supporting both statutory predicates: reason to believe Petitioner was violating immigration law, and likelihood that she would escape before a warrant could be obtained.

*D. On These Undisputed Facts, Petitioner's Immediate Release Is the Appropriate Remedy.*

26. Petitioner does not merely seek process; the undisputed facts warrant her immediate release. Each factor the agency itself considers in assessing custody favors it: a fixed address, no criminal record, no

adverse immigration history, and a manner of entry and appearance history that reflect full cooperation, not evasion. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's overstay is not disputed, but an overstay alone does not authorize open-ended detention without process: Petitioner was already in the ordinary course of the affirmative asylum process the government itself provides, having timely filed her Form I-589 before her authorized stay expired and while awaiting adjudication under established USCIS procedures. Nothing about her case is exceptional except Respondents' conduct in arresting her at a mandatory government appointment.

27. Petitioner received no advance notice or warning that appearing for her scheduled biometrics appointment could result in her arrest; to the contrary, USCIS's own notice affirmatively directed her to appear, on pain of jeopardizing her pending asylum application if she did not. Respondents have disclosed no individualized determination, made before or after that arrest, that Petitioner's continued detention rather than release under reasonable conditions is necessary. If the government may summon a person to a mandatory appointment and then arrest her upon compliance, without any disclosed individualized basis and without affording her a subsequent opportunity to contest that basis, individuals have every incentive to stop appearing for USCIS and immigration-court process altogether which is an outcome that serves neither orderly enforcement nor the public interest in the rule of law. On this record, immediate release under reasonable conditions, not further delay, is the remedy due process requires.

## VII. EXHAUSTION

28. Statutory exhaustion is not a prerequisite to a § 2241 challenge to present physical custody. Any exhaustion requirement is prudential. *Laing v. Ashcroft*, 370 F.3d 994, 997–1001 (9th Cir. 2004). Petitioner alleges that she has not received the initial custody notice needed to understand and invoke the regulatory redetermination process. Requiring completion of an administrative process that Respondents have not made meaningfully available would not serve the purposes of exhaustion.

29. Petitioner's counsel is separately requesting an immigration-judge bond redetermination under 8 C.F.R. § 1003.19 and will pursue that process promptly. This Petition seeks narrow relief ensuring that Respondents identify the statutory basis for custody, serve any operative custody determination, and do not obstruct meaningful access to the regulatory hearing process. If an immigration judge promptly conducts a redetermination, the parties can advise the Court whether any claim has become moot or requires amendment.

## VIII. STATEMENT OF FACTS

A. Background, Lawful Admission, and Compliance History.

30. Petitioner Weiwei Zou was born September 20, 1994 in Zhengzhou, Henan Province, People's Republic of China. She completed a college education at Zhejiang Gongshang University and worked most recently as a General Manager for an e-commerce company in Hangzhou from November 2020 to December 2025.

31. On January 21, 2026, the U.S. Department of State issued Petitioner a B-2 visitor visa. Petitioner departed China on January 6, 2026, traveled briefly through Malaysia and Vietnam, and arrived in the United States at New York on February 4, 2026, where she was inspected and lawfully admitted by U.S. Customs and Border Protection (I-94 Record No. 927984723A4), authorized to remain until August 3, 2026. Since her admission, Petitioner has resided at 3721 Dubonnet Avenue, Rosemead, California. Petitioner has no criminal history of any kind, in the United States or elsewhere.

B. Petitioner's Asylum Claim.

32. Petitioner was introduced to Christianity in 2023 and began attending an unregistered, private Christian house church in August 2023. On March 10, 2024, Chinese police raided that house church, detained its members including Petitioner, and took them to a local police station. There, according to Petitioner's sworn statement, an officer slapped her twice across the face when she attempted to explain that the church's practice of Christianity was not, as police alleged, an "evil cult"; police searched her phone without consent and deleted photographs showing her with fellow church members; and police coerced her into signing, and fingerprinting, a written guarantee never to attend an underground church again, under threat of arrest, formal criminal charges, and imprisonment if she did. Petitioner lived in fear of further persecution for nearly two years before departing China on January 6, 2026.

33. On August 1, 2026, before her B-2 admission period expired, Petitioner timely filed a Form I-589, Application for Asylum and for Withholding of Removal, also seeking protection under the Convention Against Torture, with USCIS (Receipt No. MGL2695339138), based on the religious persecution described above and her fear of further persecution if returned to China.

C. Petitioner's Arrest at Her Mandatory Biometrics Appointment.

34. USCIS directed Petitioner to appear on August 26, 2026 at 2:00 p.m. at the USCIS El Monte Application Support Center, 17843 Colima Road, City of Industry, California, for biometrics associated with her Form I-589. USCIS also scheduled an asylum interview for August 27, 2026 at 9:00 a.m. at the Los Angeles Asylum Office, 14101 Myford Road, Tustin, California. The notices warned of consequences for an unexcused failure to appear.

35. Petitioner timely appeared at the USCIS El Monte Application Support Center at the scheduled time on August 26, 2026. While checking in for her biometrics appointment, Petitioner was arrested and taken into custody by U.S. Immigration and Customs Enforcement. Because of that arrest and her resulting detention, Petitioner did not appear and could not appear for her asylum interview scheduled for the following morning, August 27, 2026. Respondents' own conduct in arresting Petitioner at the biometrics appointment directly caused her to miss the interview that would have adjudicated the merits of her asylum claim.

D. Current Custody.

36. Petitioner is currently detained at the Adelanto ICE Processing Center. Respondents have served Petitioner with a Notice to Appear; as of filing, that is the only document Respondents have served on her. Petitioner has not been served with a Form I-286 or any other initial custody determination and has not had an immigration-judge bond redetermination. She has no criminal history, a fixed address, and a record of appearing as directed by USCIS.

## IX. CLAIMS FOR RELIEF

### COUNT I

### Detention Under § 1226(a) Without Disclosure of the Custody Basis or Meaningful Access to Redetermination

### (28 U.S.C. § 2241; 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1, 1003.19)

37. Petitioner incorporates by reference all preceding paragraphs.

38. Petitioner was inspected and admitted and is not detained under § 1225(b). No alleged fact places her within § 1226(c). Her custody therefore arises under § 1226(a). Respondents have not disclosed the operative custody determination or basis for continued detention and have not afforded meaningful access to an immigration-judge redetermination under 8 C.F.R. § 1003.19. The Court should require Respondents to identify and produce the operative custody records, afford meaningful access to the available redetermination process, and release Petitioner under reasonable conditions if Respondents cannot establish lawful custody or continue to withhold that access.

### COUNT II

### Fifth Amendment Due Process (Lack of Notice and Meaningful Access to Custody Review)

### (U.S. Const. amend. V)

39. Petitioner incorporates by reference all preceding paragraphs.

40. Petitioner does not claim that four days of detention is prolonged detention or that *Rodriguez Diaz* requires the government to bear the burden at an ordinary § 1226(a) redetermination. She claims that detention without notice of the operative custody decision and without meaningful access to the available redetermination procedure creates an unreasonable risk of erroneous deprivation of liberty. *Mathews v.*

*Eldridge*, 424 U.S. 319, 335 (1976). Given the extent of that risk here, an arrest with no individualized basis ever disclosed, following full compliance with a government-mandated appointment, and no criminal history or other basis suggesting Petitioner is a flight risk or danger, the appropriate remedy is Petitioner's immediate release under reasonable conditions, release from unlawful physical custody being the traditional office of the writ, *see Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) or, in the alternative, prompt disclosure of the custody determination and meaningful access to redetermination.

**COUNT III**
**Agency Action Arbitrary, Capricious, and Not in Accordance with Law (Continued Detention Without a Reasoned Custody Determination)**
**(5 U.S.C. §§ 701–706)**

41. Petitioner incorporates by reference all preceding paragraphs.

42. This claim does not challenge Respondents' initial decision to arrest Petitioner, a discretionary law-enforcement judgment, or any discretionary bond amount; it challenges Respondents' failure to make, or unreasoned refusal to make, any individualized custody determination since that arrest, a question governed by ascertainable standards, not unreviewable enforcement discretion. Section 701(a)(2) of Title 5 precludes review only where "there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)). Here, the agency's own regulations and precedent supply that law: 8 C.F.R. §§ 236.1(d)(1), (g) and *Matter of Guerra*, 24 I. & N. Dec. at 40, identify the specific factors with fixed address, family and community ties, employment history, appearance history, criminal record, immigration history, and manner of entry and against which any custody determination must be measured. Nor does 8 U.S.C. § 1226(e) bar this claim: it forecloses review of a discretionary custody outcome or bond amount, not review of whether Respondents made any reasoned determination at all. *Jennings v. Rodriguez*, 583 U.S. at 295; *Martinez v. Clark*, 124 F.4th at 779–85. Respondents' continuing decision to detain rather than release Petitioner under § 1226(a) is, in any event, final agency action reviewable under 5 U.S.C. § 704: it marks the consummation of Respondents' decisionmaking on whether to release or continue to detain her, and it determines her rights and imposes a concrete legal consequence with continued physical confinement. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

43. To the extent Respondents have made a determination that Petitioner should remain in custody rather than be released under § 1226(a), that determination is arbitrary and capricious under 5 U.S.C. § 706(2)(A): it has not been disclosed to Petitioner, does not address any of the factors the agency's own precedent identifies as relevant, and is inconsistent with a record showing no criminal history, a fixed address, full compliance with every USCIS instruction to date, and voluntary appearance at the very appointment at which she was arrested. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem" or offered "an explanation for its decision that runs counter to the evidence before the agency"); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (agency policy must rest on a reasoned basis tied to the statutory scheme, not an arbitrary distinction); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23–26 (2020) (agency must reasonably explain a decision affecting a person's reliance on the government's own process).

44. In the alternative, to the extent no such determination has ever been made, Respondents' continued detention of Petitioner without ever conducting the individualized assessment the statutory and regulatory scheme is built around is itself arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A). The Court should set aside any such undisclosed or unreasoned determination and order Petitioner's immediate release under reasonable conditions.

## X. PRAYER FOR RELIEF

1. Assume jurisdiction over this Petition;

2. Order Petitioner's immediate release under reasonable conditions, given the undisputed absence of any individualized determination that her continued detention is necessary and the undisputed facts establishing that she poses no flight risk or danger;

3. In the alternative, order Respondents to show cause and file a prompt return under 28 U.S.C. § 2243, including the Notice to Appear, any Form I-200 warrant, any Form I-286 custody determination, and records identifying the statutory basis for custody;

4. Declare that Petitioner's present detention is governed by 8 U.S.C. § 1226(a), not § 1225(b), on the facts alleged;

5. Hold unlawful and set aside, as arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A), any determination, disclosed or undisclosed that Petitioner should remain in custody;

6. In the alternative, order Respondents promptly to disclose the operative custody determination and statutory basis for detention and afford Petitioner meaningful access to request an immigration-judge bond redetermination under 8 C.F.R. § 1003.19, and, if Respondents cannot establish lawful authority for custody or fail to provide that process, issue a writ directing release under reasonable conditions;

7. Retain jurisdiction long enough to ensure compliance and permit the parties to report the result of any bond redetermination;

8. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if she qualifies as a prevailing party;

9. Grant such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

TEZ LAW FIRM, A Professional Corporation

By: ______________________
ID GQX8BkWWRXX38fyitPSAktFw

JJ Zhang, Esq. (SBN 326666)

Attorney for Petitioner-Plaintiff Weiwei Zou

# EXHIBIT 1

For: **WEIWEI ZOU**

**U.S. Customs and Border Protection**
*Securing America's Borders*

## Most Recent I-94

**Note to employers, local, state or federal agency granting benefits:**
Please visit the CBP I-94/I-95 Website and click on the tab for "Get Most Recent I-94/I-95" to perform a search for the applicant to confirm that the biographic and travel information displayed on this I-94/I-95 printout matches the "Get Most Recent I-94/I-95" returned results for this applicant. Reference the CBP I-94/I-95 Website FAQs.

**Admission I-94 Record Number:** 927984723A4

**Arrival/Issued Date:** 2026 February 04

**Class of Admission:** B2

**Admit Until Date:** 2026 August 03

**Details provided on the I-94 Information form:**

**Last/Surname:** ZOU

**First (Given) Name:** WEIWEI

**Birth Date:** 1994 September 20

**Document Number:** EP9649852

**Country of Citizenship:** China

- Effective April 26, 2013, DHS began automating the admission process. An alien lawfully admitted or paroled into the U.S. is no longer required to be in possession of a preprinted Form I-94/I-95. A record of admission printed from the CBP website constitutes a lawful record of admission. See 8 CFR § 1.4(d).
- What to do if someone requests your admission info: If an employer, local, state or federal agency requests admission information, present your admission (I-94/I-95) number along with any additional required documents requested by that employer or agency.
- For security, close your browser after retrieving your I-94/I-95 number.
- Nonimmigrant travelers departing the United States by land or private vessel can now use the CBP Link Mobile Application to report their departure. Please note that departure should only be reported after you have physically left the United States. If you departed by air or sea, your departure was likely recorded automatically.

OMB No. 1651-0111
Expiration Date: 03/31/2026

# View Travel History

*Travel history includes up to 100 arrivals and departures spanning the last ten years*

## Travel History Results

Document Number: **EP9649852**

Document Country of Issuance: **China**

| Row | DATE | TYPE | LOCATION |
|---|---|---|---|
| 1 | 2026-02-04 | Arrival | NYC |

**OMB No. 1651-0111 Expiration Date: 03/31/2026**

# EXHIBIT 2

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| Receipt Number | | Case Type |
|---|---|---|
| MGL2695339138 | | I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
| **Received Date** 08/01/2026 | **Priority Date** | **Applicant** A236 979 251 ZOU, WEIWEI |
| **Notice Date** 08/07/2026 | **Page** 1 of 3 | |

WEIWEI ZOU
18472 COLIMA RD
STE 108
ROWLAND HGHTS CA 91748

**Please come to:**

14101 Myford Rd
Tustin, CA 92780

**On (Date):** Thursday, August 27, 2026
**At (Time):** 09:00AM

You and your dependent family members (if any) on your Form I-589, Application for Asylum and for Withholding of Removal, are scheduled for an asylum interview on the date and time shown above. Please read this interview notice in its entirety, as it contains important information about your asylum interview.

If you fail to appear for your interview without good cause, this may result in the immediate dismissal of your asylum application or, if you are not in legal status, you may be placed in removal proceedings and your application may be referred to an immigration judge.

***I. Who should come with you to your interview?***

Only the following people may come with you to your interview:

- ***Dependents:*** All family members included in your asylum application as dependents must come to your interview.
- ***Interpreter:*** If you are not fluent in English, you must bring an interpreter to your interview. Your interpreter must:
  - Be at least 18 years old;
  - Not be your attorney or accredited representative, or witness;
  - Not be a representative or employee of your country of nationality, or, if stateless, your country of last habitual residence; and
  - Not have a pending asylum application for which he or she has not been interviewed.

  If you need an interpreter and do not bring one, or if your interpreter is not competent, we will consider this a failure to appear for your interview without good cause and we will dismiss your asylum application or refer your asylum application to an immigration judge.
- ***Attorney or Accredited Representative:*** Your attorney or accredited representative may come with you to the interview.
- ***Witnesses:*** If you have a witness who will provide testimony in your case, that individual may come with you to your interview. However, we encourage your witness to provide sworn written testimony before your interview and not attend the interview. You may provide this written testimony to USCIS as additional evidence following the guidelines described in **Section III** below.
- ***Minors:*** If you are a minor applying for asylum by yourself, a trusted adult may come with you.

***II. What to Bring to Your Interview:***

- If available, bring a written form of identification for you and each of your family members (if any) listed as dependents on your Form I-589 indicating name, date of birth, place of birth, and nationality.
- If available, bring the original and one copy of documentary evidence of your relationship to your family members (if any) listed as dependents on your Form I-589 (such as marriage certificates, birth certificates, or affidavits).

***III. Additional Evidence:***

If you wish to submit additional evidence not previously submitted with your asylum application, you should submit it to the asylum office in writing as soon as possible or at least 7 to 10 days before the interview. You can mail the additional evidence to the asylum office or upload it via your myUSCIS account if you filed your application online. If you bring new evidence on the day of your interview, we may reschedule your interview. This reschedule will be considered *an alien-caused delay* for purposes of eligibility for employment authorization. The *alien-caused delay* will be resolved when you appear for your rescheduled interview.

***IV. Change of Address:***

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Los Angeles Asylum Office
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 2003
Tustin CA 92781-2003

**USCIS Contact Center: www.uscis.gov/contactcenter**

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| | | |
|---|---|---|
| **Receipt Number**<br>MGL2695339138 | | **Case Type**<br>I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL |
| **Received Date**<br>08/01/2026 | **Priority Date** | **Applicant** A236 979 251<br>ZOU, WEIWEI |
| **Notice Date**<br>08/07/2026 | **Page**<br>2 of 3 | |

You must report a change of address to USCIS within 10 days of moving by following the instructions on the How to Change Your Address webpage (https://www.uscis.gov/addresschange). Changing your address with the U.S. Postal Service will not change your address with USCIS.

You must leave the United States if you do not have or otherwise obtain a lawful basis to remain in the United States. The U.S. Government may provide you cost-free travel and give you an exit bonus if you leave voluntarily through the CBP Home Mobile App process. For more information, please visit: https://www.dhs.gov/cbphome.

**If you do not maintain a lawful basis to remain in the United States, you may be subject to enforcement actions, including but not limited to detention and removal, without an opportunity to make personal arrangements and return to your country in an orderly manner.**

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Los Angeles Asylum Office
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 2003
Tustin CA 92781-2003

**USCIS Contact Center: www.uscis.gov/contactcenter**

If you are visiting a field office and need directions, including public transportation directions, please see **www.uscis.gov/fieldoffices** for more information.

## Notice for People with Disabilities

To request a disability accommodation:

- Go to uscis.gov/accommodations to make your request online, or
- Call the USCIS Contact Center at 800-375-5283 (TTY 800-767-1833) for help in English or Spanish. Asylum and NACARA 203 applicants must call to make their request.

If you need a sign language interpreter, make your request as soon as you receive your appointment notice. The more advance notice we have of your accommodation request, the better prepared we can be and less likely we will need to reschedule your appointment. For more information about accommodations, visit uscis.gov/accommodationsinfo.